MOTION FOR RELEASE
PAPER NO. 23A1

Md. DOC #261860

PG. 1 of 10

~~Defense Evidence Litigation~~

* Subsequent Notice of Pending Lawsuit

Civil Action No. CCB-00.3622 United States District Ct, for MD. Criminal Case No. 97 CR0541 Wicomico Co. Cir. Ct. - Salisbury, MD. Anthony James McSheffry v. Maryland - Ms. Jaya Bajpayee, & the Daily Times - Newspaper publication; for False Imprisonment.
* "Furthermore, I (me) respectfully request litigation not to be disavowed!" —— I'm asking for 3.1 million dallors ——

(A.) A very good question exist, (first of all) did it happen? Ironically I'm serving an excessive (60) sixty-year prison term. I'm a defendant, and as well a witness, too this insatiable crime where I'm guilty of absolutely nothing. I know subsequent perjury existed! So did <u>hybrid representation</u>. <u>Repeatedly, study this ten-page letter.</u>

1. I want it mentioned in my case study, if there is a case study. Let it be said - for the record Ms. Jaya Bajpayee was under the impression, I was wealthy, and on the night in question I had very much money, on my person, which actually I didn't have. If you will note (the gist of) me saying previously in my Motions of Acquital (request) & letters to the Courts. These or not new issues. Also she simply wanted (first of all) my pick-up-truck, a cute silver Mitsubishi, all as a result of a consensual sexual escapade, which I will insist [suggest] certainly did not include intercourse. Her pants nor her panties never came off! I lead her to believe I would pay cash $300.00 [three hundred dallors] for intercourse, if it were to take place. I simply did as much as grope her breast. After that episode I simply refused to pay anything.

(2) Take into account it is my Constitutional Right - not to <u>testify</u>. However still that would of differed from our

PAPER NO. 23 A1
Case 1:00-cv-03622-CCB   Document 28   Filed 03/01/2006   Page 2 of 11
Motion for Release
A. McSHEFFRY V. MARYLAND
D.O.C. # 269860
PG. 2 of 10

original plan for me to remain silent. I claim misrepresentation of Attorney, yet still because the day of the trial - I did say I wanted to <u>testify</u>. That was before the trial commenced. My Attorney C. Bruce Anderson simply ignored my request. <u>That was my absolute Right</u>. It's called forensics (speech for formal debate)!

(B) To give a man as old as me (I seek medical parole) DOB 10/29/54 a harsh sixty-(60) year-sentence is a violation of the 8th— Amendment cruel & unusual, <u>basically I'll never see the light of day again</u> in what was to amount in-to a minor sex-offense at best, the <u>kidnapping - was simply bogus</u>, meant to fill in the cracks where their (the prosecutor) plot was weak. What I was accused of doing must-be repugnant to civilized society, or why-what proof do they have anything occurred (HANKY-PANKY), alleged wrong. This alleged victim wasn't beaten and battered - there is no hospital evidence or pictures submitted to show other-wise. Ask yourself why had I received so much time [penology]? <u>Because of Jaya's lies!</u> She got caught-up in doing what she had done all her life, lie. <u>U.S. v. Miles 207 F.3d. 988 - evidence - "prejudicial," etc..</u>

(1.) She had perjured herself in court Aug. 20 & 21 of 1997, and made false allegations amounting to slander & imprisonment. I thought there was a specific part of the FEDERAL GOVT. (a government agency) I could contact [in just such a case] because this alleged victim was a FEDERAL EMPLOYEE - and thus - accordingly the State govt. (Md.) virtually had no right to intervene, or try me first. She had just started a new job at NASA as an electronic technician - or at least that claim was made in court, by the prosecuting Atty. (for Wicomico Co.) Jane C. Miller. One week later she had been fired for -

Motion for Release
Paper No. 23A1

MCSHEFFRY v. MARYLAND

"Too know the TRUTH Reading it; is the most beguilingly simple thing!"

testifying against the State of Md. in Federal Ct. for a Drug Kingpin from Queens - N.Y.C.. / Davis Ruark is the Wicomico Co. States Atty; Jane Miller was Assistant States Atty.. — THIS CASE IS ESOTERIC / Not Publicly Disclosed —

✱ Rather she works for NASA now or not - it is not known, they may have even found better use today for their money. Even so, Jaya was very smart. She said, "she went to the University of Pittsburgh, too school." She told me, "she had been a electronic engineer who knew the technology of designing a electronic panel respondsible for the triggering of an explosive device that would cripple the path of a disabled missle on it's way into space, which was simply out of control." Quoting her.

We talked for more than a hour - while at the Sheraton Bar & Lounge in Salisbury, Md. in the early morning. We talked about every thing, where she went to school, who I was - life in general. I think that we had a CONSENSUAL (CONVERSATION) Relationship then & there, and nothing like the sordid array of thoughts put into the eyes of the jury by this then prejudice Judge Richard D. Warren who on Aug. 20-21, 1997 before that jury said, "she was distraught and feared for her life, putting into the picture a gun that had not existed up until then", the day of the trial. U.S. v. Miles 207 F3d. 988 - EVIDENCE - "PREJUDICIAL," etc..

C. I demand a new trial, and then to have the words GUN or WEAPON omitted because of previous & obvious evidence as to where it did not exist. Other-wise how do you figure (in any sense of the word) I was charged with 2ND degree RAPE; had there been a weapon involved certainly the charge & sentence of RAPE in the (1st) FIRST DEGREE would exist.

Motion for RELEASE
PAPER NO. 23A1      MCSHEFFRY V. MARYLAND      PG. 4 of 10
                    D.O.C 269860

*quote - Stephen King 1994, pg. 164 INSOMNIA; "then the door bell chimed again and he found he had decided. It didn't matter if that was Saddam Hussein down there — this was his place, and he wasn't going to cower in it like a whipped cur."

(D.) Isn't it strange how the things you READ you NEVER forget. In fact it is ironic & poignant, like reading lies! Even the theory I present is circumstantial, but it unquestionably warrants further investigation. Look at the times Jaya B. failed to appear, and the court date was changed or canceled.

(1.) One must observe the extreme psychological and adverse publicity/& its effects then given from the press, the <u>Daily Times</u> News publication on SAT. Sept. 28, 1996. They even went as far to make a claim that a woman on Lincoln Avenue in Salisbury, Md. had been beaten and RAPED, it's not me I didn't do it. (These are extreme subsequent thoughts my <u>Atty. C. Bruce Anderson</u> [A paid Atty.] should of mentioned at trial concerning the adverse publicity from the press. It didn't make sense he couldn't slow the procedure down at the Courts expense and examine the issue. The Article states but it doesn't exactly say I had been the culprit however yet still the article is totally exclusive to me. It certainly makes me a suspect in that very case. The entire story deviates from the truth. "It says Ms. Jaya Baspayee (name not given) was <u>Abducted</u>, she was RAPED - the front page-headline, & ROBBED." It is a Defense Exhibit I have a original copy (in Prison now). At the least later (at trial) the Robbery was determined to be a lie, a false accusation. However RAPE &

Case 1:00-cv-03622-CCB   Document 28   Filed 03/01/2006   Page 5 of 11

Motion for Release
Paper No. 23A1

McSHEFFRY V. MARYLAND
Md. D.D.C. # 269860

PG. 5 of 10

especially kidnap are totally not true, false, absurd & out of hand, beyond control. Cite as: North Carolina v. David Ward - 338 N.C. 64 [2] / This arrest stratagem was illegal, expunge it.

E. There is no DNA - sample given/or taken; witness/victim didn't promptly report incident until five (5) days later. No corroborating witness - nor a reason to support the hideous accusations. She (Jaya) was more than well on her way home two hours after her car became disabled. She had paid me twenty dollars to assist her at the Exxon, she [testified (perjury) saying], "I grabbed her from behind [(its not so) as she was walking to use the pay phone (why would she need to do that she had a hand-held phone) - around the neck & forced her into my vehicle. This is where the Asst.- State's Prosecutor Jane C. Miller suborned perjury, telling Ms. Jaya Bajpapee - so early in her trial testimony to lie, and perjury that testimony. Its not so it didn't happen. No I'm not a rapist, and hell no I didn't kidnap anyone. Plus now [after nine (9) years] and having been convicted you must esp. realize it was my first ever sex-offense (its not like I'm a repeat offender)? * "There is only one way to describe the Asst. state's Atty. Jane C. Miller on my trial dates Aug. 20-21, 1997 - she was extremely verbose (using more words than necessary)". The trial was certainly a dozzy. Defense Atty. C. Bruce Anderson's closing arguments were cursory.
① Because she was a Federal employee - and they say what was said, or what I had done allegedly, then will you the Courts - please tell me why aren't I in a Federal Penitentiary, on the night in question she rode around the

State of Delaware with me for about one-half hour on the notion of finding a tow-bar to pull her disabled car. All of this was around twelve to twelve-thirty Saturday morning, sometime prior to the time we re-entered (Md.) <u>the remote location</u>, where this suggested assualt were to have occurred. I basically contend this is a Federal Court matter.

(2.) Most of all consider I had a Eight (8) year plea-bargain, now after (9) nine-years-of imprisonment, I formally request a conciliatory gesture (from the (Courts) freedom! My attorney misrepresented me when he failed to tell me the vast importance of <u>excepting the plea of guilt</u>, and the consequences for not excepting.

<u>Cite as Boria V. Keane 99 f3d. 492</u>

(F.) Why wasn't I read my Rights! <u>MIRANDA</u>? I wasn't on Parole or Probation. Cite Case: <u>Oregon V. Mathiason</u> 429 US 492 (1977) Pgs. 5-6; Moreover, Miranda teaches that even if a suspect is not in custody, warnings are necessary if he is "<u>otherwise deprived of his freedom of action in any significant way.</u>" I believe we would have a better understanding of the extent of that qualification, and therefore of the situations in which warnings must be given to a suspect who is not technically in custody, if we had the benefit of full argument and plenary consideration. From FN5 429 U.S. 492 –

✱ Not only did I receive ineffective assistance but I was denied being told by the police, "I had a right to counsel after being (and before) asked serious pertinent questions (+thru the use of a phone)

alleging a felony (that of RAPE only; not kidnapping) through the use of a deceitful & underhanded method, having the alleged victim (Ms Jaya Bajpayee) call me acting as an agent. It was totally <u>Mental coercion</u>. So basically, the next time anybody calls me on the phone, its best to say, "I want my attorney!" States Exhibit No. 15 & 16 is proof my Miranda Rights had been violated. The courts had even given me credit for time served starting on Sept. 25, 1996. The phone call and my arrest was on Thurs. Sept. 26. They are more than aware my arrest was probable, not to say they had the necessary evidence but only the unsupported accusations that initially were shunned, by a Maryland State Police Dispatcher in the early morning of Sept. 21, 1996. Why? <u>Because she was drunk (intoxicated)</u>, the Judge (Richard Warren) then made it appear Officer Andersen (MSP) was the one (at trial) who had done something wrong, an admonished the officer. I say lets hear that transcript, and what Jaya had said to the officer. It concerns this case it shouldn't be disavowed. My Attorney should of made it a issue, because of her intoxication. She had called the Maryland State Police Barrack E from the Sheraton Inn. Is that why she didn't come forward to report the incident.

① Six - (6) days after this alleged incident between me & Jaya B., a call was made - they (Sgt. J. Thompson & Cpl. Willie Benton and Jaya Bajpayee use what is known as a telephone sting & call me with her on the other end of the phone [Sept. (Thur.) 26-1996] at about 5:37 PM till 6:07 PM concerning this alleged rape which was too

have occurred. Stop and think, "she asked me somewhere near (43) forty-three times why I had raped her?" Officer Benton was telling her what to say! Miranda has not yet been read to me. I have a good idea the police or involved, Jaya wasn't so happy when I left her at the Sheraton Inn on the 21st. She didn't get the $300.00 or my Mitsubishi. She is the one guilty of extortion.

There was never any sex between the two of us, just me groping her breast. Now back to the call — naturally I'll try to appease her. Wouldn't you? Anyone would! Stop & think. Theres more. Now consider if you will, they all but made (the police & Jaya B.) a very probable suggestion/accusation saying such & such occurred so often. <u>What is she getting at I ask myself?</u> "Is she a threat to me are my family, or simply anything in the vicinity of this telephone, Rapes' not only a crime Its mighty-naughty!" Its mental coercion if nothing else. Its inappropriate. The question was raised and it is well know that corporal Willie Benton (MSP) along with Sgt. John Thompsen (Sheriff dept.) sat at the table listening & advising in this phone (tape-exhibit No. 15 and its written transcript No 16) conversation between me and Jaya B. suggesting the things for her to be said to me. They use Ms. Jaya B.'s consent (signature) to do this recording of my private telephone. Because she had said the things she did, it was easy to suspect the police involvement, but still because I never heard the police I had to ask

myself was her boy-freind there and could I raise some commotion from a jealous lover. Consider what laws I broke with the statements I made while on the phone - NONE? Understand what she was trying to say calling me. I'm concerned for the saftey of my family. Wouldn't you be? She's accusing me of felony RAPE. First of all I think this girl is a perfessional hooker, she came onto me, and was out to extort my vehicle. I didn't have the $300.00, I said I would pay her for sex, I hadn't received yet.

(2.) When the telephone call was received Thur. 9-26-96 I knew the police were questioning me thru Ms. Jaya-Baspayee, she was acting as an informant & agent for the State. An interrogation was taking place. That is why I confessed, before they took time to announce themselves, it was a instinctive decision - MIRANDA had been violated, they say the tape ran out. I knew they heard the remark, the rest of the time was simple denial. Finally after the tape ran out, and cpl. Benton was telling Jaya to get off the phone, yet our conversation only lingered, I abruptly told her, "okay yeah - sure I raped you!" It was even sarcasm, but I'm sure she and the officers heard it, and quite possibly it was on the audio tape - exhibit No. 15, I should have a exclusive right to hear that tape. "I represent myself!" From reading the written transcript, exhibit No. 16, I honestly believe it was fraudulently omitted from that (recording) tape. But if it did run out, its less than good enough, its

Motion for Release; MCSHEFFRY v. MARYLAND | Pg. 10 of 10
23 A1

incomplete evidence, the conversation lasted another five minutes. It's sordid evidence. They don't have any right to moniter my phone calls, have me assist them them in building a case against me without first advising me of my rights. KATZ v. UNITED STATES - 389 US 347; OREGON v. MATHIASON 429 US 492
   THE FIFTH AMENDMENT IN MIRANDA v. ARIZONA 384 US 436
* Also at another point in time while in-custody, "I wasn't told that I had the (exclusive) right to a free attorney being a indigent (impoverished) suspect while being questioned by corporal Willie Benton at the Maryland State Police Barracks hancuffed./ Cite as Michigan v. Tucker 417 US 433/ Md. v. Bowers 320 Md 416
Prejudicial effect of counsel's deficient performance need not meet preponderance of the evidence standard to establish ineffective assistance.
   "Otherwise the next time somebody like her makes a big deal about a mysterious adventure she incurred five days prior, an truly she has no chronological recollection of the events. Then if a call comes, "Houston, we've got a problem." Mission Control can simply reply, "Best of Luck we're rooting for you"./ I'm not the ghoul you think."
* I ask for a new trial, a reduction of sentence, and simple exoneration. "Be fair play by the rules."

Mr. Anthony James McSheffry                   Sincere thanks,
   D.O.C. #269860                              Anthony McSheffry
WCI - 13800 McMullen Hwy SW
Cumberland, Maryland
   21502 - 5622    // "I'm your friend, Beleive!"

23A1 MOTION

FEB. 27 (MON) 2006

All parties were sent copies

Certificate of Service

① CLERK - MARK S. BOWEN
THE CIRCUIT CT. for
Wicomico County
P.O. BOX 198
Salisbury, Md.
21803-0198

② Davis Ruark, STATE Atty.
P.O. BOX 1006
Salisbury, Maryland
21803-1006

③ Atty. General State of Maryland
200 St Paul Place
Baltimore, Md.
21202

④ Clerk, United States District
— COURT —
Attn. Judge C. Blake
101 W. Lombard St.
Baltimore, Maryland
21201-2691

— Et al. —